IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MITUTOYO CORPORATION, MITUTOYO AMERICA CORP. and HEXAGON METROLOGY NORDIC AB, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 03 C 0990 |
| CENTRAL PURCHASING, LLC., | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Mitutoyo Corporation's, Mitutoyo America Corp.'s and Hexagon Metrology Nordic AB's ("Mitutoyo") motion for summary judgment of patent infringement and on the breach of contract claim. This matter is also before the court on Defendant Central Purchasing, LLC.'s ("Central") motion for summary judgment of noninfringement. For the reasons stated below, we grant Mitutoyo's motion for summary judgment in its entirety and we deny Central's motion for summary judgment.

## BACKGROUND

Plaintiff Mitutoyo brought the instant patent infringement suit against Defendant Central over U.S. Patent No. 4,743,902 ("'902 Patent"). The '902 Patent

1

covers "[a] system for measuring the relative movement of one object with respect to another, such as the movement of a slide with respect to a scale of a measuring instrument utilizes the capacitative effect of a series of electrodes associated with a slide and another series of electrodes associated with the cooperating scale, the changes in capacity caused by relative movement between the two members being analyzed by an electronic circuit." U.S. Patent No. 4,743,902 (issued May 10, 1988). The '902 patent claims in relevant part:

> *Independent Claim 1*: A measuring device for capacitative determination of the relative position of two relatively movable parts with respect to one another comprising a slide provided with a number of groups of supply electrodes distributed along the direction of relative movement, each of the groups having n number of supply electrodes, n being an integer greater than 2; signal generator means having n number of signal outputs, each of the supply electrodes in each group being connected to a respective one of said signal outputs whereby all supply electrodes are supply with voltages according to a cyclic pattern, the slide also being provided with at least one receiving electrode; a signal processing unit connected to at least one receiving electrode; a scale being provided with a single electronic pattern comprising internally galvanically isolated scale electrodes, each scale electrode comprising two mutually galvanically connected parts, one being a detecting part and being located close to the area of the scale over which the supply electrodes of the slide can be moved, the other of the two parts being a

transferring part and being located close to the area over which the at least receiving electrode of the slide can be moved, whereby the position of the slide along the scale determines the signal from the at least one receiving electrode which is derived from at least two adjacent supply electrode signals and the position of the slide with respect to the scale can be determined by the identification in the signal processing unit of the phase position of said signal from the receiving electrode.

*Dependent Claim 2*: The measuring device according to claim 1, wherein said signal generator means having n number of signal outputs generates n periodical signals of the same amplitude and frequency whereby the signals are phase displaced with respect to each other by N.multidot.(360/n) degrees, where N is an integer.

*Id.* The controversy between the parties began in 1992, when Mitutoyo placed Central on notice that Central allegedly infringed the '902 Patent through Central's sale of digital calipers manufactured by a company called Norwood ("Norwood Calipers"). After negotiations in 1994, the parties contracted that Central would cease its sales of the Norwood Calipers. In 1995, however, Central brought a declaratory judgment action that the '902 Patent was invalid and thus unenforceable. Mitutoyo prevailed, and the '902 Patent remains valid.

In 2002, Central began selling digital calipers manufactured by a different

company, Guanglu Measuring Instrument Co., Ltd ("Guanglu Calipers" and "Avenger Calipers", hereafter together referred to as "the accused calipers"). Mitutoyo brought the present action alleging that the sale of the accused calipers infringes the '902 Patent and that Central breached its 1994 contract with Mitutoyo. On March 30, 2004, we granted Mitutoyo's motion for summary judgment on the issue of patent validity. On October 27, 2004, the parties participated in a Markman hearing in this court in accordance with *Markman v. Westview Instrs., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). On March 3, 2005, we entered claim constructions based on that Markman hearing and on Markman memoranda filed by each party. Each party subsequently submitted motions for summary judgment, based on our constructions of the claim.

The October 27, 2004 Markman hearing and subsequent briefs revolved around the construction of two disputed claim terms. The first was "signal generator means," which this court did not construe as a means-plus-function element, 35 U.S.C. Section 112 ¶ 6, primarily because the claim disclosed sufficient structure to overcome the presumption that the inclusion of the word means" triggered ¶ 6.*Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1347 (Fed. Cir. 2002). Instead, we construed the term as "an electronic unit that generates one or more output signals." We construed the second disputed term, "cyclic pattern," as "a signal pattern which repeats from one group of supply electrodes to the next; the sequence of the signals is the same in each group of supply electrodes."

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party.

*Anderson*, 477 U.S. at 255.

In the context of patent infringement, summary judgment is appropriate only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001). *see also Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004)(stating that "a trial court may determine infringement on summary judgment only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'"). The burden of establishing infringement is upon the patentee suing for infringement and thus "an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001)(stating that "[s]ummary judgment of noninfringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims."); *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## DISCUSSION

Mitutoyo asserts that based on this court's claim constructions, there is no dispute of material fact and that as a matter of law Central's accused calipers infringe the '902 Patent. Central argues that as a matter of law, the accused calipers do not infringe the '902 Patent literally or under the doctrine of equivalents.

I. Motion For Sanctions

Mitutoyo has filed a motion for sanctions pursuant to Federal Rule of Civil Procedure Rule 37 ("Rule 37") which provides in relevant part that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c). Mitutoyo claims that through its discovery requests in interrogatories, production requests, and depositions, Mitutoyo sought information regarding the structure and operation of the infringing calipers and the factual bases for Central's non-infringement position. According to Mitutoyo, no such information or evidence was forthcoming from Central until after the close of discovery when Central attached as an exhibit to its summary judgment a document which discusses the sought after information. Mitutoyo asks that the court sanction Central by striking Central's motion for summary judgment, bar Central from relying on the document at trial, reimburse Mitutoyo for fees paid to its technical expert, and award attorney's

fees to Mitutoyo incurred in defending against Central's motion for summary judgment. Central argues that it did not produce the document sooner because it was "privileged" and that it was not created until after discovery. (Sanc. Ans. 10-12). However, Central acknowledges that the document was created in September of 2004, and thus, Central fails to explain why the document was not disclosed until April of 2005, when Central filed its motion for summary judgment. Also, Central's claim that the document was "privileged" is no justification for withholding of the document or failing to inform the other side that such a document exists. Central now claims that it has decided to waive its privilege to the document so that Central can use the document in its case, but if Central desired to use the document, the decision to waive its privilege in the document should have been made during discovery. Finally, although the document itself may have been created after the close of discovery, Central fails to explain why it could not have researched the information included in the document prior to September of 2004 in order to comply with Mitutoyo's discovery requests. Central argues that the document was not used for claim construction and was only shown to its expert for the first time in March of 2005. However, neither excuse justifies withholding the existence of such a document from Mitutoyo when discovery requests specifically addressed such matters.

Mitutoyo also correctly points out that Central failed to properly produce the document in accordance with the notice of Central's Federal Rule of Civil Procedure 30(b)(6) witness. In addition, the document that Central failed to produce discusses

its bases for its positions that were not previously disclosed. Central argues that its deposed witness simply forgot the bases during the depositions. (Sanc. Ans. 5). However, Central did not make any attempt thereafter to correct its witness' testimony in that regard to indicate that there were bases for Central's position. Central also argues that its positions have not changed and that its positions were given in the same detail as Mitutoyo's positions that were provided to Central. We do not agree that Central's position has not changed and Central's excuse that its positions were given in the same detail as Mitutoyo's is not a justification for lack of detail for its position. However, we do not find that the discovery violations by Central warrants an award of expert fees or attorneys fees to Mitutoyo, but we find it appropriate to strike Central's exhibit attached to its summary judgment motion. We also note that even if we were to allow Central to introduce the exhibit, as will be explained in detail below, the ultimate outcome in this matter is not altered and we would grant Mitutoyo's motion for summary judgment and we would deny Central's motion for summary judgement.

I. Mitutoyo's Motion for Summary Judgment

Mitutoyo moves for summary judgment on the issue of patent infringement and on the breach of contract claim.

A. Patent Infringement Claim

Patent Infringement analysis involves two steps. First, the court determines

the scope of the claims as a matter of law and second, a finder of fact makes a factual comparison between the properly construed claims and the accused device to determine whether there was infringement. *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002);*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc );*Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1313 (Fed. Cir. 2003); *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1581 -1582 (Fed. Cir. 1996); *see also Amazon.com, Inc. v. BarnesAndNoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

A patent infringement claim is based upon 35 U.S.C.§ 271(a), which states that "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). In order to successfully prove infringement, "the patentee must show that the accused device meets each claim limitation either" : 1) "literally," or 2) "under the doctrine of equivalents."*PSC Computer Products, Inc. v. Foxconn Intern., Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004). In order to prove literal infringement a patentee is required to establish "that the accused device contains every limitation in the asserted claims." *WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1350 (Fed. Cir. 1999)(*quoting Mas-Hamilton Group v. LaGard, Inc*, 156 F.3d 1206, 1211 (Fed.Cir.1998))(stating that "[i]f even one limitation is missing or not met as

claimed, there is no literal infringement."); *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991)(stating that "[w]here all claim limitations are present in the accused device exactly, the claims 'read on' the accused device and literal infringement is made out.").

As indicated above, the Federal Circuit has recognized that "[e]ven where there is no literal infringement, infringement *may* still be found under the doctrine of equivalents if the limitation or limitations not literally present are there by equivalents." *Id.* The Supreme Court of the United States has recognized that "to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing" because "[s]uch a limitation would leave room for--indeed encourage--the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Graver Tank & Mfg. Co. v. Linde Air Products Co*, 339 U.S. 605, 607 (1950). Under the doctrine of equivalents, an accused device infringes on a patent "if each element of the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1317 (Fed. Cir. 2003). There are also several exceptions to the doctrine of equivalents. One exception is when there is "a narrowing amendment made to satisfy any requirement of the Patent Act" which "may give rise to an estoppel on infringement by equivalents." *Business Objects,*

*S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1374 (Fed. Cir. 2005)(explaining that "[a] narrowing amendment gives rise to a presumption that the patentee surrendered any subject matter between the amended claim as originally filed and claims allowed by the Patent and Trademark Office (PTO)" and that "[t]o overcome this presumption, a patentee may show "that the alleged equivalent could not reasonably have been described at the time the amendment was made, or that the alleged equivalent was tangential to the purpose of the amendment, or that the equivalent was not foreseeable (and thus not claimable) at the time of the amendment.")(quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002)).

A second exception to the doctrine of equivalents is "when a patent drafter discloses but declines to claim subject matter" and thus, "dedicates that unclaimed subject matter to the public" because an "[a]pplication of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would 'conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.'" *Johnson & Johnston Ass'n. Inc. v. R.E. Serv. Co., Inc*, 285 F.3d 1046, 1054 (Fed. Cir. 2002). A third exception to the doctrine of equivalents is that "the doctrine of equivalents cannot allow a patent to encompass subject matter existing in the prior art," and that the doctrine cannot "allow coverage of obvious, or 'trivial,' variations of the prior art, . . . for such subject matter could not have been lawfully patented in the first instance." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed. Cir. 1999).

In the instant action, the parties' summary judgment motions center around whether, as a factual matter, Central's calipers infringe upon the '902 patent,

12

meaning whether the Central's calipers contain "every limitation in the asserted claims." *WMS Gaming, Inc.*, 184 F.3d at 1350. Mitutoyo argues that Central has conceded that the infringing calipers include every limitation of Claim 1 of the '902 patent except: 1) the signal generator means, 2) the supply electrodes being supplied with voltage according to a cyclic pattern, and 3) a signal processing unit that identifies the phase position of the signal received from the receiving electrode to in turn determine the position of the slide in relation to the scale. (M SJ Mem. 4). We agree with Mitutoyo's contention that there is no genuinely disputed issues that would indicate that Central did not infringe upon the '902 Patent.

Central does not dispute and thus admits, pursuant to Local Rule 56.1 certain facts which show that the infringing calipers included all of the limitations of Claim 1 of the '902 patent except for the limitation regarding the phase position limitation. Central also admits to certain facts in the declaration of its own proposed witness, Dr. Clement A. Skalski ("Skalski"), that show that there is infringement of the phase position limitation. (Skalski Declaration Par. 13-16, 30-32). We agree with Mitutoyo's contention that since there is "a predetermined phase relationship between the phase of the reference/test signal and the phase of each of the supply electrode signals, identifying the amount by which the received signal is displaced or shifted in time relative to the reference/test signal also identifies the amount by which the received signal is displaced or shifted in time relative to a supply electrode signal." (M Reply SJ 3-4). This satisfies the phase position identification requirement of Claim 1 of the '902 patent.

13

Central also argues that the declaration of Joseph C. McAlexander ("McAlexander") does not support Mitutoyo's motion for summary judgment. However, Central's criticisms of McAlexander's declaration are irrelevant for the purposes of summary judgment for a variety of reasons, such as the fact that Central made various admissions in relation to the structure and operation of its infringing calipers and the fact that Central concedes that the parties' experts agree in regards to the manner in which the phase position of the received signal is determined. Central has thus failed to point to a position justified under the law that would support its position of non-infringement. Mitutoyo also points to a series of deficiencies and inaccuracies in the declaration of Skalski.

Central argues that it needs additional discovery on certain matters and attempts to create the image of disputed facts when there are not in fact genuine factual disputes. For instance, Central claims that it needs additional discovery from McAlexander in regards to the similarities between the Guanglu calipers and Avenger calipers to the Norwood calipers. Mitutoyo argues that the issue is not relevant in the instant action. We entirely agree that the similarities of the infringing calipers in the instant action with the Norwood calipers, that Central had previously agreed not to produce and import, is not a relevant issue for the determination of infringement in this action. The issue before us is whether the infringing calipers infringed upon the '902 Patent and as such any similarities of the infringing calipers with the Norwood calipers is irrelevant. Central's focus on the issue is merely an attempt to distract the court from the pertinent issues and to create the illusion that

there are disputed facts and unanswered material points of fact that need to be addressed at trial. We also note that the supplemental briefs filed by the parties in relation to the summary judgment motions do not alter the ultimate outcome of any of the determinations made by the court in this memorandum opinion. Therefore, we grant Mitutoyo's motion for summary judgment on the issue of patent infringement.

### B. Breach of Contract Claim

Mitutoyo also moves for summary judgment on the breach of contract claim. In the agreement between Mitutoyo and Central, Central specifically agreed that it would not import or market digital calipers that infringe upon the '902 Patent. We have granted above Mitutoyo's motion for summary judgment on the issue of infringement and have found as a matter of law that the calipers in question infringed upon the '902 Patent. Thus, we also find as a matter of law that Central breached is obligations under its 1994 agreement with Mitutoyo and we grant Mitutoyo's motion for summary judgment on the breach of contract claim.

## CONCLUSION

Based on the foregoing analysis, we grant Mitutoyo's motion for summary judgment in its entirety and deny Central's motion for summary judgment of noninfringement. We grant in part and deny in part Mitutoyo's motion for sanctions.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 20, 2005

15