IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mitutoyo Corporation and Hexagon Metrology Nordic AB, <br><br> Plaintiffs, <br><br> v. <br><br> Central Purchasing, LLC, <br><br> Defendant. | Civil Action No. 03C 0990 <br><br> Honorable Samuel Der-Yeghiayan |

## PLAINTIFFS' MOTION FOR ENTRY OF FINAL JUDGMENT UNDER FED. R. CIV. P. 54(b) ON COMPENSATORY DAMAGES (AND THE ASSOCIATED PREJUDGMENT INTEREST)

Plaintiffs Mitutoyo Corporation and Hexagon Metrology Nordic AB (collectively "Mitutoyo") move for entry of final judgment under Fed. R. Civ. P. 54(b) on the compensatory damages (and the associated prejudgment interest) set forth by the Agreed Order filed simultaneously with this motion.

Final judgment should be entered as to those compensatory (reasonable royalty) damages and the associated prejudgment interest because defendant Central Purchasing, LLC's ("Central Purchasing") liability for the compensatory damages claim was affirmed by the Court of Appeals for the Federal Circuit and the amounts of the compensatory damages and the associated prejudgment interest are agreed-to, final amounts that will not change as the remaining claim – the willful infringement claim – is litigated to completion. Further, the compensatory damages claim is separable from the willful infringement claim, as established by the fact that the

compensatory damages claim is final, while a jury trial will be held on the willful infringement claim beginning on April 7, 2008.

I.  **<u>INTRODUCTION AND FACTUAL BACKGROUND</u>**

Central Purchasing resumed its infringement of the patent-in-suit, Mitutoyo's U.S. Patent No. 4,743,902 (the "902 patent"), in May 2002, and ruthlessly continued its second go-around of infringement until the 902 patent expired. Yet, almost six years later, and almost three years after this Court found Central Purchasing liable for such infringement, Central Purchasing has still not paid a penny for that infringement. Central Purchasing has used the legal process to delay paying Mitutoyo the compensatory damages to which it is entitled for Central Purchasing's wrongful patent infringement. This Court should end that delay and injustice by entering final judgment under Fed. R. Civ. P. 54(b) as to the compensatory damages and the associated prejudgment interest, which are agreed-to, final amounts.

That delay is even more egregious when considering the background of the disputes between the parties regarding Central Purchasing's infringement of the 902 patent. Those disputes began in 1992, when Mitutoyo placed Central Purchasing on notice that Central Purchasing was selling digital calipers supplied to Central Purchasing by Norwood Enterprises (the "Norwood calipers") that infringed Mitutoyo's 902 patent. April 20, 2005 Memorandum Opinion, p. 3; Exhibit 1, Response to Interrogatory No. 10. To resolve that dispute, Central Purchasing, in March 1994, agreed to stop selling the Norwood calipers and to not import into or sell in the United States any other digital calipers that infringe the 902 patent. Exhibit 2. Despite that agreement, Central Purchasing, in 1995, instituted an unsuccessful declaratory judgment action against Mitutoyo that sought to have the 902 patent declared invalid and unenforceable. Exhibit 3. That action ended with the United States District Court for the District of Columbia

(1) rejecting all of Central Purchasing's attacks on the validity and enforceability of the 902 patent that Central Purchasing did not voluntarily withdraw and (2) holding the 902 patent valid and enforceable. Exhibits 4 and 5. Central Purchasing appealed, but later withdrew the appeal. Exhibits 6 and 7. Thus, the result of the first Mitutoyo/Central Purchasing case was holdings that Mitutoyo's 902 patent was valid and enforceable.

Despite its failed attempt to have the 902 patent declared invalid and unenforceable, and despite its 1994 agreement to not import and sell infringing calipers, in May 2002 Central Purchasing began selling infringing calipers supplied by Guilin Guanglu Measuring Instrument Co., Ltd. ("Guanglu calipers"). Exhibit 8, Response to Interrogatory No. 1; Exhibit 9, 39/23-40/11. It took Central Purchasing ten years, from its first infringement in 1992 to when Central Purchasing resumed its infringement in 2002, to find a Chinese supplier that would indemnify Central Purchasing with regard to infringement of the 902 patent. Exhibit 9, 74/10-75/8.

Further compounding the egregiousness of Central Purchasing's delay in paying for its infringement is the fact that it is clear that the Guanglu calipers infringe the 902 patent. First, Central Purchasing's only non-infringement argument was based on the incorrect assertion that the claims of the 902 patent require a direct comparison of a received signal with a supply electrode signal. That assertion was found to be so unpersuasive and insufficient that this Court granted summary judgment of infringement, finding that no trial was necessary because there was no genuine issue of material fact as to infringement. April 20, 2005 Memorandum Order. The Federal Circuit affirmed, after a *de novo* review:

1. expressing implementing the standard that "no reasonable jury could return" a verdict of infringement;

3

2. holding that Central Purchasing's sole non-infringement assertion – that the supply electrode signal and the received signal must be directly compared for there to be infringement – is "without merit" and is "based on an impermissibly narrow understanding of what claim 1 and the stipulated claim construction embody;" and

3. finding that the 902 patent specification "expressly provides for determination of the phase angle via an indirect comparison of the supply signal and the received signal using a reference signal."

*Mitutoyo Corp. v. Central Purchasing LLC*, 499 F.3d 1284, 1289-90 (Fed. Cir. 2007).

Second, the infringing Guanglu calipers are not different from the infringing Norwood calipers, from the perspective of the 902 patent claims, that Central Purchasing agreed to stop selling in 1994 because they infringed the 902 patent. Exhibit 10, ¶12 and Exhibit 3 and Tabs A-C thereto; Exhibit 9, 62/19-64/10.

Central Purchasing's liability for the compensatory damages claim is finally established by this Court's April 20, 2005 Memorandum Opinion and the Federal Circuit opinion cited above. The parties have agreed to the amount of the compensatory damages, which are the reasonable royalty damages that were recalculated in view of the Federal Circuit opinion. That amount, and the amount of the associated prejudgment interest through January 31, 2008, are set forth in the concurrently filed proposed Agreed Order. The only dispute pertains to when those damages and interest are payable. Mitutoyo respectfully submits that the compensatory damages and associated prejudgment interest should be payable immediately by entering judgment under Fed. R. Civ. P. 54(b) in that regard, while Central Purchasing continues to seek a delay in its day of reckoning. The compensatory damages and associated prejudgment interest should be

payable immediately via entry of final judgment under Fed. R. Civ. P. 54(b) because the only remaining claim, the willful infringement claim, is separable from the compensatory damages claim and because there is no dispute as to Central Purchasing's liability for nor the amounts of the compensatory damages and associated prejudgment interest. Nothing that happens in the case will affect the amounts of the compensatory damages and the associated prejudgment interest.

## II. FINAL JUDGMENT SHOULD BE ENTERED UNDER FED. R. CIV. P. 54(b) AS TO THE COMPENSATORY DAMAGES (AND THE ASSOCIATED PREJUDGMENT INTEREST)

### A. The Standards of Fed. R. Civ. P. 54(b) Are Met

Under Fed. R. Civ. P. 54(b), a Court may enter final judgment on one or more of the claims in a case, without entering final judgment on all of the claims, if the Court "expressly determines that there is no just reason for" delaying entry of final judgment on the selected claims:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

In patent infringement cases such as this case, Federal Circuit case law interpreting Fed. R. Civ. P. 54(b) should be applied. *Spraytex, Inc. v. DJS&T*, 96 F3d 1377, 1379 (Fed. Cir. 1996). According to the Federal Circuit, "[a] judgment is final for Rule 54(b) purposes when it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Houston Industries, Inc. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996), quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956). *See also W.L. Gore & Associates, Inc. v. International Medical Prosthetics Research Associates, Inc.*, 975 F.2d 858, 861-62 (Fed.

Cir. 1992).

In this case, the determination of the compensatory (reasonable royalty) damages claim (and the associated prejudgment interest) as set forth in the concurrently filed proposed Agreed Order is an "ultimate disposition" of that claim because, as stated above, Central Purchasing's liability for those damages and that interest has been finally determined, and the amounts of those damages and that interest are agreed to amounts that will not change as the case is litigated to completion. Indeed, the concurrently proposed Agreed Order, when entered by the Court, ultimately disposes of the compensatory damages claim and the associated prejudgment interest. Moreover, that the compensatory damages claim is separable from the only remaining claim, the willful infringement claim, is conclusively established by the fact that there will be a trial on the willful infringement claim in April, 2008, even though the compensatory damages claim is finally adjudicated.

The Federal Circuit has held that an Fed. R. Civ. P. 54(b) analysis focuses on (1) the finality of the judgment and (2) the separateness of the claims. *W.L. Gore*, 975 F.2d at 862.

Addressing those two "focus" points, first, there is no dispute as to the finality of the Agreed Order with regard to the compensatory damages and the associated prejudgment interest. The second focus point is part of the no just reason for delay determination. *W.L. Gore*, 975 F.2d at 862. In *W.L. Gore*, the Federal Circuit adopted the two factor test for no just delay – (1) whether there are separable claims and (2) whether the appellate court would have to decide the same issues more than once – set forth in the Supreme Court case of *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980), as follows:

> [I]n deciding whether there are no just reasons to delay ... [i]t was ... proper for the District Judge ... to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would

> have to decide the same issues more than once even if there were subsequent appeals.

975 F.2d at 862.

This case satisfies both factors. First, the compensatory (reasonable royalty) damages claim is separable from the willful infringement claim, which is the only remaining claim to be litigated (enhanced damages and attorney fees are part of the willful infringement claim). The compensatory damages claim was resolved independently of the willful infringement claim. There will be an April 2008 trial on the willful infringement claim, even though the compensatory damages claim has been finally resolved.

Second, the appellate court, the Court of Appeals for the Federal Circuit, will not have to decide the same issues more than once if final judgment is entered under Fed. R. Civ. P. 54(b) as to the compensatory damages claim and the associated prejudgment interest. The compensatory damages and the associated prejudgment interest set forth in the simultaneously filed Agreed Order are <u>agreed-to</u> amounts based on the Federal Circuit's opinion. There will be no appeal of that Agreed Order. Thus, the Federal Circuit will not have to decide issues covered by this judgment more than once – in fact, it will not even have to consider those issues once.

While Federal Circuit cases are the governing law on this issue, the Seventh Circuit cases on point are also instructive. The Seventh Circuit has held that there is no precise test for determining whether there is a just reason for delay and advises that District Courts should consider any factor that is relevant to the issue:

> At present, no precise test exists for determining whether there is a just reason to delay the entry of judgment that can be satisfactorily or easily applied in every case; thus, the district court should feel free to consider any factor that seems relevant to a particular action, keeping in mind the policies the rule attempts to promote.

*Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 949 (7th Cir. 1980). Whether there

is a just reason for delay is primarily left to the discretion of the District Court. *Id.*, at 948, citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956).

Moreover, under Seventh Circuit law, there are four requirements under Fed. R. Civ. P. 54(b):

1. there must be an action involving multiple claims or multiple parties;
2. there must be a final decision by the District Court as to at least one claim or as to one party;
3. the District Court must make an express determination that there is no just reason for delay; and
4. the District Court must expressly direct the entry of judgment.

*Id.*, at 947.

Applying those requirements to this case, first, this is an action involving multiple claims – the Federal Circuit clearly considered the willful infringement claim to be a separate claim from the compensatory damages claim when it remanded the case for a trial limited to the willful infringement claim. Second, when this Court enters the concurrently filed proposed Order, there will be a final decision by this Court as to liability for compensatory damages claim, the amount of the compensatory damages, and the amount of the associated prejudgment interest. Third, this Court should make an express determination that there is no just reason for delay for at least the reasons discussed above. Fourth, this Court should expressly direct entry of final judgment as to the amounts of the compensatory damages and prejudgment interest.

In *Bank of Lincolnwood*, the Seventh Circuit approved the District Court's reliance on the facts that liability had been finally adjudicated (admitted) and that there was an uncontested right to immediate payment in entering judgment under Fed. R. Civ. P. 54(b). *Bank of Lincolnwood*,

622 F.2d at 949. Likewise, in this case, there is no question as to the liability of Central Purchasing for the compensatory damages and prejudgment interest, and the amounts of the compensatory damages and prejudgment interest are not in dispute. There is an uncontested right to immediate payment of those amounts. Thus, judgment should be entered under Fed. R. Civ. P. 54(b).

> **B.    Mitutoyo Is Withdrawing Its Agreement That The Compensatory Damages Can Be Paid After The Willful Infringement Issue Is Resolved, Just Like Central Purchasing Withdrew Its Agreement That The Willful Infringement Issue Could Be Resolved On Summary Judgment Motion Briefs**

Before the October 11, 2007 hearing, counsel for the parties agreed to a plan to expedite the final resolution of this case, which plan included submission of the willful infringement issue to the Court by summary judgment briefs and delaying payment of the compensatory damages until the willful infringement issue is resolved. Exhibit 11, pp. 4-6; Exhibit 12, pp. 4-6 (and in particular page 6, where Central Purchasing's counsel states "lead counsel on this matter thinks that they could solve this [willful infringement] issue on the papers" and "it's the parties' belief that at this juncture they could resolve this [willful infringement] issue through briefing.") Mitutoyo agreed to the second part (delayed payment of compensatory damages) on the belief that the case would be quickly resolved by the first part (submitting the willful infringement issue by summary judgment briefs).

Central Purchasing reneged on the first part of that agreement (see pages 7-8 of joint Memorandum Regarding Whether the Willful Infringement Issue can be Resolved by Summary Judgment, filed November 2, 2007), such that the case will not be quickly resolved and will be unnecessarily delayed. Because the plan to expedite the case has been disavowed by Central Purchasing, Mitutoyo is withdrawing its agreement that the compensatory damages can be paid after the willful infringement issue is resolved. The case will not be resolved quickly. Central

Purchasing is abusing the process to further delay its day of reckoning.

## III. CONCLUSION

For at least these reasons, final judgment should be entered under Fed. R. Civ. P. 54(b) on the concurrently filed Agreed Order.

Respectfully submitted,

Date: January 11, 2008   By:   /s/ Darle M. Short
James A. Oliff
E-mail: joliff@oliff.com
Kirk M. Hudson
E-mail: khudson@oliff.com
Darle M. Short
E-mail: dshort@oliff.com
OLIFF & BERRIDGE, PLC
277 South Washington Street, Suite 500
P.O. Box 19928
Alexandria, Virginia 22314
Telephone: (703) 836-6400

Patrick G. Burns, Esquire
GREER, BURNS & CRAIN, LTD.
300 South Wacker Drive
25th Floor
Chicago, Illinois 60606
Telephone: (312) 360-0080
E-Mail: pburns@gbclaw.net

Attorneys for Plaintiffs